*In re* MARRIAGE OF BRIAN T. DIDDENS, Petitioner-Appellant, and DEBRA A. DIDDENS, Respondent-Appellee.

Third District    No. 3—93—0074

Opinion filed December 22, 1993.

Bennett J. Braun, of Stefanich, McGarry, Wols & Okrei, Ltd., of Joliet (John F. Wols, of counsel), for appellant.

Belford, Goldner & Koehl, of Naperville (Richard L. Goldner, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

The marriage between Brian T. and Debra A. Diddens was dissolved by the circuit court of Will County on January 12, 1990. Their marital settlement agreement resolving issues of property disposition, support and custody of their two children was approved on the same date. Pursuant to the agreement, the parties had joint legal custody, with physical custody in Debra's home and reasonable visitation with Brian. At the time of the divorce, their children, Nicholas and Andrew, were ages three and one, respectively. Debra remained in the parties' marital residence in Romeoville until the house was sold in April 1990, and Brian moved in with his parents in New Lenox. Later that year Brian married his current wife,

Wanda. Wanda has two adult children, a son and a daughter, who share their home.

On April 6, 1992, Brian petitioned the court for modification of custody on the ground that there had been "a material change of circumstances of the parties since entry of the Judgment for [*sic*] Dissolution of Marriage." Brian's petition was based on various facts, including that: Debra and the children had moved in with Debra's parents, Mary Ann and Donald Becker, and her brother, Joe, in Romeoville following the sale of the marital residence; Nicholas, who had suffered from asthma prior to the divorce, had developed multiple respiratory ailments, speech problems and drooling; and Andrew's health, likewise, had deteriorated from asthma and ear infections.

At the hearing on the petition, Dr. Judith Savage, a pediatrician, testified that Brian had brought the children to her for a medical evaluation in February 1992. She stated that although Andrew had a low grade temperature at the time, he exhibited no signs of illness. Redness in Nicholas' eardrums indicated that he had bilateral otitis media. During her interview, the children told her that there was smoking in their home, they hated it, they couldn't breathe well, and they wished the smoking would stop. Dr. Savage expressed her opinion that asthma attacks are triggered by smoking and, in general, smoking has a very deleterious effect on children with asthma.

Dr. J.B. Goebel, a clinical psychologist retained by Brian to evaluate the children, testified that he had counselled the children and Debra between October 1991 and May 1992. He stated that Brian and Wanda had expressed concern about cigarette smoking in the Becker household and its contribution to the children's medical problems. During one session, Nicholas volunteered that he hated smoking. Goebel asked Debra about the situation, and she informed him that she and her parents limited their smoking in the house to the bathroom.

Dr. Robert Stoner, a clinical psychologist appointed by the court pursuant to section 605 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 605), testified as an expert witness in Brian's case in chief. He conducted his investigation between June 8 and August 10, 1992, for the purpose of evaluating the children's custodial circumstances. Dr. Stoner visited the parties in their respective homes and interviewed the children and members of both households. According to Dr. Stoner, the Becker home was smoke-free at the time he visited.

Both Dr. Stoner and Dr. Goebel recommended that it was in the children's best interests that Brian have physical custody of them.

Debra testified that, although she still smoked, she had cut down the habit considerably after the divorce, and that no one smoked in her parents' house at the time of the hearing. She testified that after the divorce she began looking for employment. In April 1992, she succeeded in obtaining part-time employment as a cashier at Dominick's. At the time of the hearing, in addition to working, Debra was taking a typing course and planned to pursue computer programming courses to improve her job skills.

In her case in chief, Debra presented the testimony of her parents and a brother, Robert Becker, as well as the testimony of Madonna Bertolotti, Nicholas' kindergarten teacher. Ms. Bertolotti had taught Nicholas since he started preschool classes in August of 1991. Ms. Bertolotti testified that Nicholas did well at school socially and picked up the learning activities easily. She stated that she knew that he was asthmatic and that she could call Debra if Nicholas had an attack so that he could be put on his inhaler machine. In fact, Nicholas had never had an asthma attack at school.

At the completion of the testimony of all witnesses—including Nicholas and Andrew—and arguments of counsel, the court rendered its decision on December 29, 1992, denying the petition to modify custody. The court stated that the parties' marital settlement agreement "contemplated [that] no modification shall be sought unless significant changes occur in the environment in which the children are being raised or in the conduct of the custodial parent or non-custodial parent which would seriously endanger the children's physical mental moral or emotional health." The court further noted that "[c]hapter 40, section 610 provides that *** a modification of custodial order shall not be granted unless a material change of circumstances has occurred and it was proven by clear and convincing evidence." The court then stated its finding "from the totality of all the evidence that no substantial change has occurred *** making necessary a change of custody." In its written order, the court found "no material change in circumstances of the parties justifying a change in custody." Brian filed a timely notice of appeal, and we now affirm the judgment of the circuit court.

Brian initially argues that the trial court applied an incorrect standard in determining whether a change of custody was appropriate and that the court failed to make specific and adequate findings respecting changes in circumstances relative to the custody determination. The crux of his argument is that the trial judge improperly

raised the standard of proof by employing the expression "substantial changes" in his oral pronouncement and "material change" in the written order, since neither "substantial" nor "material" appears in the statute.

The statutory standard for modification of custody provides:

"The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. In the case of joint custody, if the parties agree to a termination of a joint custody arrangement, the court shall so terminate the joint custody and make any modification which is in the child's best interest. The court shall state in its decision specific findings of fact in support of its modification or termination of joint custody if either parent opposes the modification or termination." Ill. Rev. Stat. 1991, ch. 40, par. 610(b).

In *In re Marriage of Bass* (1988), 176 Ill. App. 3d 249, 530 N.E.2d 717, we considered argument on appeal from a decision granting a petition to modify custody analogous to that presented by Brian. There, the trial court based its decision on consideration of section 610(a), which applies to petitions brought within two years after a custody judgment, even though the hearing on the petition to modify was held after two years had elapsed. After reviewing the record and the trial court's findings, we affirmed the court's judgment "regardless of [the court's] understandable and nonprejudicial finding under section 610(a) of the IMDMA" because we determined that the court's specific findings of fact supported its decision under subsection (b) as well. 176 Ill. App. 3d at 253, 530 N.E.2d at 720.

■■ Likewise, in this case, we find that the court's references to "substantial" and "material" changes are nonprejudicial semantical surplusage that do not demonstrate that the court applied an improper standard for determining whether a change in custody was justified. Obviously, in this case, there had in fact been changes in the parties' circumstances during the two-year period following the judgment of dissolution. Most significantly, Debra and the children

moved from the marital residence into the home of her parents and brother, Joe, and Debra found a job. Meanwhile, Brian's situation had changed in significant respects as well. He had remarried and moved out of his parents' house and into the home he shared with his new wife, Wanda, and Wanda's adult children. These changes, while significant in terms of the parents' lifestyles, were not demonstrated to be changes in conditions "directly related to the needs of the children" (see *Bass*, 176 Ill. App. 3d at 253, 530 N.E.2d at 720, citing *Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089, 425 N.E.2d 1251). Thus, for purposes of the petition to modify, we agree with the trial court that the changes in the parents' circumstances were not "material" or "substantial." Accordingly, we hold that the court in so characterizing them did not improperly alter the statutory standard of proof for modification of custody.

■ Nor do we find that the court erred in failing to find on the basis of evidence presented at the hearing that a change in the circumstances of the children required a modification of custody. Brian argues that the trial court had to make specific findings of fact in support of its decision, whether it be to grant or deny a petition under section 610(b). Brian's interpretation of the statute appears to be buttressed by *dicta* in *Bass*, but in our opinion the plain language of the statute mandates such findings only in contested cases where a modification or termination of joint custody is granted. Where a modification is denied, it is sufficient that the court find only that a change in circumstances requiring modification has not been proved. We hold that the court's order in this case satisfied the statutory mandate.

Lastly, Brian contends that the court's denial of his petition for modification of custody is contrary to the manifest weight of the evidence. Brian concedes that there was no evidence of unfitness or neglect on Debra's part and that there is ample evidence of mutual love and affection between her and the children. Nonetheless, he urges that the custodial environment in the Becker home—in particular, the smoking—is so demonstrably deleterious to the children's development and well-being that a change in custody cannot be rationally denied.

As a general rule, changed conditions alone are not sufficient to justify a modification of child custody unless such conditions adversely affect the child's welfare. The controlling statutory language of section 610(b) evinces a preference for retaining stability in custodial relationships. And, the trial court's determination to deny a petition to modify custody will not be disturbed on appeal

unless there is a clear abuse of discretion or the decision was contrary to the manifest weight of the evidence. *In re Marriage of Fuesting* (1992), 228 Ill. App. 3d 339, 344, 591 N.E.2d 960, 963 (citing *Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089, 425 N.E.2d 1251; *In re Marriage of Gunter* (1981), 93 Ill. App. 3d 1043, 418 N.E.2d 149; and *Caulkins v. Caulkins* (1979), 68 Ill. App. 3d 284, 385 N.E.2d 1117).

Obviously, Brian is concerned with the children's medical needs. However, it was not established that the environment in the Becker home caused the health problems. Nicholas was asthmatic prior to the divorce, and Andrew appeared to be developing some of the same physical symptoms that Nicholas suffered from as he, Andrew, grew older. Moreover, the evidence demonstrated that the adult smokers in the Becker home had voluntarily eliminated cigarette smoke in the house for the benefit of the children. Although the testimony established that the children required frequent medications, it did not demonstrate that they were being deprived of medical attention for their needs in their current custodial situation. Thus, regardless of whether the expert witnesses opined that the children could benefit from residing in their father's home, the trial court was not required to find that there were changes in the children's circumstances requiring a modification in custodial arrangements to serve their best interests.

■ It is apparent to us that the trial court applied the proper statutory standard, gave due consideration to all of the testimony presented, weighed the evidence and reached a decision consistent with the best interests of the children. We conclude that the court's denial of Brian's petition to modify custody was neither an abuse of the court's discretion nor contrary to the manifest weight of the evidence.

For the reasons stated, we affirm the judgment of the circuit court of Will County.

Affirmed.

McCUSKEY, P.J., and SLATER, J., concur.