*In re* MARRIAGE OF CLYDE L. BASS, JR., Petitioner-Appellee, and MONAFAE M. BASS, Respondent-Appellant.

Third District   No. 3—87—0825

Opinion filed November 9, 1988.

250

Kost & Kost, of Lewistown, and Thomas W. Moran IV, of Peterson, Cirilli, Moran & Hammann, of Superior, Wisconsin (Keith K. Kost, of counsel), for appellant.

Jackson, Mitchell & Collier, of Peoria (Donald R. Jackson, of counsel), for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant appeals the decision of the trial court transferring custody of the parties' three minor children to the plaintiff.

The parties were divorced on June 17, 1985. At that time, Clyde Bass, Jr. (plaintiff), was 36 years old and Monafae (defendant) was 28 years old. The parties had three children during their marriage, to wit: Ellen Bass (Ellen), born February 10, 1976; Laura Bass (Laura), born May 29, 1977; and Clyde Bass III (Clyde III), born December 11, 1978. Monafae was awarded custody of the children; however, Clyde, Jr., was granted reasonable visitation.

On May 2, 1986, Monafae filed a petition to remove the children from Illinois to Wisconsin. Her ability to support herself and the children became more limited due to a decrease in her earnings. She wanted to move to Wisconsin, where she knew she had a better job and benefits waiting. She stated that she was promised a dairy farm job, including a salary, a house with paid utilities, food, telephone, gasoline, auto repairs, and medical, dental, and eye coverage. The farm onto which she desired to move was owned and managed by her family.

On July 11, 1986, the trial court entered its order allowing her to remove the children to Wisconsin. Monafae and the children thereafter moved to Wisconsin. From June 1986 until December 1986, Monafae and the children lived with her maternal grandmother in a three-bedroom house on the farm. Monafae's maternal grandmother was living out of wedlock at this time. Clyde III and his great-grandmother each had their own bedroom; Laura and Ellen shared a bedroom; and Monafae slept on a hide-a-bed in the living room. Ever since they moved to Wisconsin, Monafae's boyfriend (Glen) would stay two to three nights a week. He and Monafae would stay in Laura and Ellen's room, forcing them to sleep on the hide-a-bed.

Near the end of 1986, Monafae and the children moved into a two-bedroom house on the farm. When the frequency of Glen's overnight visits increased, Glen and Monafae regularly occupied the girls' bedroom. From March 1987 until May 1987, the hide-a-bed was broken and the girls were then required to sleep uncomfortably on the floor. Frequently the children were left unattended when they arrived home from school.

While in Wisconsin, the children attended elementary schools, church occasionally, and engaged in extracurricular activities. A counselor remarked that Clyde III had difficulty dealing with his parents' divorce; however, Laura and Ellen adjusted well. Their teachers noticed the children were well dressed and groomed, clean, and appeared healthy. Laura and Ellen were good students, but Clyde III was only average. Monafae seemed interested in the children's academic development as well as extracurricular activities; however, she did not permit them to invite friends over after school. The children claimed they did not like the school they attended in Wisconsin.

On May 28, 1987, Clyde, Jr., filed a petition to modify the dissolution judgment, seeking to obtain custody of the children. Clyde, Jr., claimed the environment in which the children lived in Wisconsin was adversely affecting their physical, mental, and emotional health. There were a couple of reported incidents of Monafae physically disci-

plining Clyde III with a coat hanger and a belt. Clyde III and Laura wished to live with Clyde, Jr; however, Ellen was not so resolute about the same. Monafae filed a motion to dismiss, or alternatively, a motion to transfer the cause to Wisconsin.

On July 14, 1987, the trial court denied Monafae's motions. Simultaneous thereto, Clyde, Jr., filed a motion for temporary custody and a restraining order prohibiting Monafae from removing the children from Illinois until the court could decide the matter on the merits. Clyde, Jr.'s, motion was granted on July 17, 1987. The court entered a permanent order granting the same on November 6, 1987, from which the defendant appeals.

Clyde, Jr., lives in Princeton, Illinois, in a duplex owned by his parents. He and the children occupy one half of the duplex, his parents reside in the other unit. The unit in which Clyde, Jr., and the children reside consists of two bedrooms and two bathrooms. Ellen and Laura share a bedroom and a bathroom, and Clyde III stays in the other bedroom. Clyde, Jr., sleeps on a hide-a-bed in the living room.

Clyde, Jr., commutes 96 miles daily for his job. During the day, the children are cared for primarily by their paternal grandfather. Their grandfather is 68 years old, occupationally disabled due to a stroke, but nevertheless ambulatory. The children were given considerably more freedom in Princeton than they enjoyed in Wisconsin. The plaintiff intended to buy a house in Princeton; however, he has not yet obtained financing. Clyde, Jr., has a girlfriend with whom he admittedly has sexual relations. The children, on occasion, have stayed overnight with their father at his girlfriend's house. Since March 30, 1987, Clyde, Jr., spent approximately $250 on clothes for the children.

Monafae initially contends that the transfer of custody of the children to Clyde, Jr., was improper since the trial court did not follow the requirements of section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (hereinafter IMDMA) (Ill. Rev. Stat. 1987, ch. 40, par. 610(b)).

■ There is a legislative preference favoring the present custodial parent to retain custody so as to promote stability and continuity in the child's environment. (*In re Custody of Dykhuis* (1985), 131 Ill. App. 3d 371, 475 N.E.2d 1107.) The party seeking modification of custody must meet the standard of proving his case by "clear and convincing evidence," which is a higher level of certainty than a preponderance of evidence. *Dykhuis*, 131 Ill. App. 3d at 373.

■ According to section 610(b):

"The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence \*\*\* that a change has occurred in the circumstances of the child or his custodian \*\*\* and that the modification is necessary to serve the best interest of the child." (Ill. Rev. Stat. 1987, ch. 40, par. 610(b).)

The trial judge shall support his decision with specific findings of fact in support of his grant or denial of modification of custody if either parent opposes the modification. (Ill. Rev. Stat. 1987, ch. 40, par. 610(b).) Both parties agree that section 610(b) of the IMDMA applies to this modification, rather than section 610(a). The trial court applied section 610(a) of the IMDMA rather than section 610(b).

■■ Under section 610(b), the findings must establish that the evidence showed that the original custodial parent is unfit to retain custody or that a change of conditions, directly related to the needs of the children, makes a change of custody in their best interests. (*Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089, 425 N.E.2d 1251.) According to the trial court's findings as set forth in its memorandum opinion, the evidence presented at the modification hearing established that a change in custody was warranted. The trial court apparently based its decision on section 610(a) of the IMDMA because the plaintiff's petition to modify was filed within the two-year period of the entry of the dissolution judgment. The trial judge then applied the standards listed in section 602 of the IMDMA in determining that the reversal in custody was in the best interests of the children.

■ The evidentiary hearing was held and the trial court's decision was made after the two-year period elapsed, which required the trial court to make its findings under section 610(b) of the IMDMA, which requires the satisfaction of more stringent standards in order to reverse an earlier custody decision. Section 610(b) of the IMDMA requires the court to "state in its decision specific findings of fact" in support of its decision. (Ill. Rev. Stat. 1987, ch. 40, par. 610(b).) The fact that the trial judge set forth within his memorandum opinion specific findings under section 610(a) of the IMDMA does not require remanding this matter for a finding under section 610(b) of the IMDMA because his decision contained sufficiently specific findings to also fulfill the requirements of section 610(b) of the IMDMA.

We find the trial court made the requisite specific findings of fact in this matter. The trial court stated that it considered the best interest of the children, *e.g.*, the mother's violence, everyone's sleeping arrangements, the wishes of the children, etc., in arriving at its decision. Therefore, we affirm the trial court regardless of its understandable and nonprejudicial finding under section 610(a) of the IMDMA.

Monafae also argues that the trial court erred by retaining jurisdiction of this matter and by not following the Uniform Child Custody Jurisdiction Act (UCCJA) (Ill. Rev. Stat. 1987, ch. 40, par. 2101 *et seq.*). We disagree.

■ According to section 4 of the UCCJA (Ill. Rev. Stat. 1987, ch. 40, par. 2104), the trial court did have the jurisdiction to entertain this petition for modification of custody. That section provides in part:

"(a) The circuit courts have jurisdiction to make a child custody determination by initial or modification judgment if:
* * *
2. it is in the best interest of the child that a court of this State assume jurisdiction because

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; * * *
* * *
(b) A court, once having obtained jurisdiction over a child, shall retain such jurisdiction unless it concedes jurisdiction to a foreign state or none of the parties to the action, including the child, remain in Illinois." Ill. Rev. Stat. 1987, ch. 40, par. 2104.

Prior to June 1986, the minor children spent their entire life in the State of Illinois. Clyde, Jr., his parents, and other relatives continued to reside within the State of Illinois. The fact that Clyde, Jr., could be the potential custodian of the children indicates that there would be substantial evidence concerning the children's future care and a significant interest and connection with the State of Illinois.

In addition, the circuit court did not concede jurisdiction to the State of Wisconsin, as is necessary to transfer jurisdiction according to the UCCJA. (Ill. Rev. Stat. 1987, ch. 40, par. 2104(b).) The trial court specifically retained jurisdiction over this matter according to the dissolution judgment; therefore, we find that the circuit court of Fulton County was properly vested with jurisdiction and properly entertained this petition for modification.

Based on the foregoing, the circuit court of Fulton County is affirmed.

Affirmed.

STOUDER, P.J., and SCOTT, J., concur.