In re MARRIAGE OF JOYCE GAIL WEBER, Petitioner-Appellee, and JON MICHAEL WEBER, Respondent-Appellant.

Third District   No. 3—92—0804

Opinion filed August 5, 1993.

BRESLIN, J., dissenting.

White, Marsh, Anderson, Brusatte, Vickers & Deobler, of Ottawa (John F. Vickers, of counsel), for appellant.

Hoffman, Mueller, Creedon & Twohey, of Ottawa (George Mueller, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Jon Weber appeals from an order transferring custody of his four-year-old son to the custody of the boy's mother, Joyce Wright, thereby modifying the agreed custody order that had been entered three years earlier at the time of the dissolution of the parties' marriage.

The issue on appeal is whether there was clear and convincing evidence that a change had occurred in the circumstances of the child or of his custodian since the prior judgment was entered and, if so,

whether the change of custody is necessary to serve the best interests of the child. We reverse the order of the circuit court.

Jon and Joyce were divorced in 1989. The record discloses several hearings on petitions for reciprocal orders of protection prior to the divorce with temporary custody being granted to Jon, who lived with his parents. The first day of the 1989 hearing on the issue of child custody and support included testimony that both Jon and Joyce were drug users, that Jon had pled guilty to the charge of battery against Joyce, and that Joyce had charges for DUI and possession of a hypodermic syringe pending and had a previous burglary conviction.

On the second day of the 1989 custody hearing, the parties presented a settlement agreement which the court agreed to enter after considerable discussion and testimony from both parties. The settlement agreement provided in part as follows:

> "The parties agree that Counter Respondent Jon Michael Weber shall have legal custody of the minor child Jon Michael Weber. Counter Respondent and the minor child presently are residing with Counter Respondent's parents and this agreement as to custody is based upon the representation that Counter Respondent and minor child intend to continue such living arrangements. Should Counter Respondent or the minor child cease to reside with Counter Respondent's parents, the parties agree that this shall be considered a significant change in circumstances warranting a reconsideration of the issue of custody even if within 2 years of the date of judgement herein."

In addition, the agreement provided for Joyce to have visitation from 9 a.m. Thursday until 7 p.m. Saturday of each week and for both parties to keep each other advised regarding events affecting the health and welfare of the child.

In April of 1992 Joyce filed a petition to modify the prior custody order, requesting that custody be awarded to her. The father and the minor child continued to reside with the paternal grandparents, as required in the court order. At the hearing on the petition, Joyce testified that she has successfully completed a drug and alcohol rehabilitation program, that she has not used drugs or alcohol to excess for two years, that she is employed at housecleaning, that she will marry Jim Bretag in October, that Jim has also successfully completed drug rehabilitation, that she has "turned her life around," that she has never missed her scheduled visitation with her son Jon, that she has cared for him at other times as well, that her son Jon gets along well with

his nine-year-old half-brother who lives with her, and that she has been treated successfully for cancer and for depression.

Joyce testified that Jon picked up their son at her house about 10 times in three years, with the grandparents picking him up the rest of the time, and that 4 of the 10 times, Jon had seemed to be "high." A nephew of Joyce also testified as to recent drug use by Jon. Joyce's fiance, Jim Bretag, testified that Jon had appeared to be "high" when he came to pick up his son one time, and when Jim asked Jon how he was doing, he responded, "Same old thing. Just work and party."

The paternal grandmother testified that there had been no drug use in her home, but that she had smelled marijuana on Joyce one time. Joyce denied any marijuana use on that occasion. Jon denied using LSD or cocaine since the divorce. When asked whether he had smoked marijuana, he asserted his fifth amendment privilege against self-incrimination. The grandmother and Jon both testified as to Jon's involvement with his son, that he plays with the boy, reads to him, gives him his bath at night, and pays for his food and health insurance.

A friend of Jon testified that he saw Joyce in a tavern in May of 1992 and that she had two or three beers and "had a buzz on." He also said that he gave her a ride home. Joyce admitting having one beer in the tavern on her birthday but denied seeing or knowing the witness. She said he may have mistaken her sister Brenda for her since they resemble each other and her sister frequents that tavern.

Three days after the hearing on Joyce's petition, the trial judge announced her ruling in open court. She stated that she was persuaded that at the time the original custody order was entered, neither parent was capable of providing the child a stable environment and that the supervision and interaction of the paternal grandparents was the key to the award of custody to the father. The judge found that there was some evidence of continued drug use by the father but that the minor child was not affected by it. The court further found that there has been a substantial change in the circumstances of the child in that the mother has rehabilitated herself and can now provide a stable environment for the child. The court also concluded that it was in the best interest of the child to be transferred to the custody of his mother with the father to have liberal visitation each weekend. This appeal followed.

Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 610(b); 750 ILCS 5/610 (West 1992)) provides that a prior custody judgment may be modified only if a change has occurred in the circumstances of the child or his custo-

dian, if modification is necessary to serve the best interests of the child, and if proven by clear and convincing evidence.

This provision was interpreted in *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385, 1389, as follows:

"Section 610(b) reflects an underlying policy favoring the finality of child-custody judgments and making their modification more difficult. Its effect is to create a legislative presumption in favor of the present custodian, thereby promoting the stability and continuity of the child's custodial and environmental relationship which is not to be overturned lightly."

It has also been said that section 610(b) requires that the evidence show the original custodial parent to be unfit to retain custody or that a change of conditions directly related to the needs of the child requires a change of custody in the best interest of the child. (*In re Marriage of Bass* (1988), 176 Ill. App. 3d 249, 530 N.E.2d 717.) The party seeking modification of custody must prove his or her case by clear and convincing evidence, a higher level of certainty than a preponderance of evidence. *In re Custody of Dykhuis* (1985), 131 Ill. App. 3d 371, 475 N.E.2d 1107.

The record on appeal clearly establishes that the evidence before the circuit court did not show any change in the circumstances of the custodial parent. The father continues to live with his parents and continues full-time employment. Also, there was no evidence of any change in conditions directly related to the needs of the child. No events or conditions detrimental to the child's health or welfare were disclosed. There was no evidence that the boy had needs that were not being met or that the home in which he had been living for three years was unsatisfactory in any way. In fact, Joyce testified that she knew her son was well cared for under the present arrangement. The only negative evidence was that the father may have continued to use drugs, but the trial court expressly found that the child was not adversely affected by any such drug use.

The only change in circumstances had occurred in the life of the noncustodial parent, and under section 610(b), custody cannot be changed on that basis alone. A mere recitation by the court that it is in the best interest of the child to award custody to the mother is not sufficient to satisfy the requirement of the Act that specific findings of fact must be made in support of a modification. (*In re Marriage of Oliver* (1987), 155 Ill. App. 3d 181, 507 N.E.2d 1298.) The circuit court stated that the change in the circumstances of the mother was a change in the circumstances of the child because now the child had a parent that was fit to care for him. Since there was no evidence to

show that the child's present environment was inadequate or harmful in any way, the court's conclusion was contrary to the requirements of section 610(b).

■ Joyce's position, by implication, seems to be that her right as a natural parent is superior to that of the paternal grandparents, whom she considers to be the actual custodians of her son. This court has previously indicated that the natural mother should not prevail where the child has been integrated into the home of its grandparents over a period of time by agreement of the parties and where the child's best interest would not be served by a change of custody. See *Barclay v. Barclay* (1978), 66 Ill. App. 3d 1028, 384 N.E.2d 564.

Joyce relies upon *In re Marriage of Gibbons* (1987), 158 Ill. App. 3d 998, 512 N.E.2d 52, where by agreement, custody of two daughters was awarded to the mother at the time of the divorce. When the father subsequently filed a petition to modify the custody, the trial court refused to consider evidence relating to the father's circumstances either at the time of the divorce or subsequently, ruling that the only relevant evidence was that relating to any changes in the condition of the custodial parent or the child. The reviewing court held that ruling to be erroneous under the special circumstances of that case where evidence was introduced for the first time showing that the mother was unfit at the time of the prior judgment. That being so, the evidence concerning the noncustodial parent became relevant, and the cause was remanded for a new hearing.

■ Joyce contends that she has shown that both she and Jon were unfit at the time of the original order, that the trial court intended that the grandparents have charge of the child, that Jon's conduct has not changed, that his excessive drug use continues to render him an unfit parent, that her condition has greatly improved, and that she can now provide a stable home for her son. However, the trial court here did not find Jon to be unfit.

Two things distinguish this case from *Gibbons*. Here it is clear from the record that the trial judge who entered the original custody order was fully appraised of the conduct of both parties. He had heard testimony concerning drinking, drug use, and criminal activity on the part of both parents, and thus approved the custody agreement which involved the paternal grandparents' presence as essential to the child's well-being. Such was not the case in *Gibbons*, where the trial court first heard evidence of possible parental unfitness at the hearing on the petition to modify.

Secondly, the issue in *Gibbons* concerned the trial court's exclusion of evidence of the noncustodian's condition. Here, the court

heard extensive evidence concerning Joyce's condition as well as that of Jon and of the son. The issue here, therefore, is whether the evidence was clear and convincing that a change of circumstance as to either Jon or the boy had occurred. As we have previously indicated, the trial court's conclusion was contrary to the manifest weight of the evidence, and the petition to modify should have been denied.

For the reasons stated, we reverse the order of the circuit court of La Salle County and direct that an order denying the petition to modify custody be entered.

Reversed with directions.

STOUDER, J., concurs.

JUSTICE BRESLIN, dissenting:
I respectfully dissent.

My colleagues base their decision on the general rule that in order to modify a custody order a substantial change is needed in the circumstances of the child or the custodial parent. In the traditional case, this is undoubtedly the rule, but the case before us is not the traditional case.

In the case at bar, the evidence clearly indicates that Jon was not fit at the time of the original custody decision. He had a history of drug abuse, run-ins with local law enforcement, and physical violence toward Joyce within earshot of the child. The agreed custody order itself protected against Jon's unfitness by requiring that Jon would continue to live with his parents. If Jon moved from his parents' home, that move would constitute a substantial change in circumstances and would warrant a reconsideration of the custody issue. Implicit in these provisions is a recognition of Jon's unfitness to care for the child on his own. Further evidence reflected little interaction between Jon and his son, with Jon only picking the child up from visitation with Joyce approximately 10 times in three years and Jon's mother caring for the child primarily during the day and putting the child to bed every night.

Under the circumstances, I believe *In re Marriage of Gibbons* (1987), 158 Ill. App. 3d 998, 512 N.E.2d 52, is clearly applicable. In *Gibbons* the noncustodial parent sought to obtain custody by introducing evidence of the custodial parent's unfitness at the time of the original custody determination and the noncustodial parent's fitness at the time of the sought-after modification. The court ruled, in part:

"If the evidence indicates the custodial parent was fit and acceptable at the time of the prior hearing, then modification must rest on subsequent change of circumstances of the child or of the child's custodian. However, if the evidence indicates a lack of fitness at the time of the prior agreed judgment, then that factor should be considered in determining the propriety of a modification under the provisions of section 610 \*\*\*." (*In re Marriage of Gibbons* (1987), 158 Ill. App. 3d 998, 1003, 512 N.E.2d 52, 55.)

According to *Gibbons*, then, because the evidence indicates a lack of fitness on Jon's part at the time of the prior agreed judgment, it was appropriate for the trial court to consider Joyce's change in circumstances.

My colleagues distinguish *Gibbons* because the evidence concerning the unfitness of the mother in that case did not come to light until the time the father moved to change custody. I find this to be a distinction without a difference. Surely it would not be suggested that we provide relief to parties who allow a court to make a decision without fully apprising the court of the facts but deny relief to parties who bring to the court's attention all relevant facts.

My colleagues further distinguish *Gibbons* on the grounds that in *Gibbons* the issue was whether evidence regarding the noncustodial parent's changed circumstances should be allowed. In the case at bar, the trial court did allow such evidence. However, this case represents the next logical step proceeding from the *Gibbons* decision. Now that the evidence has been allowed, the issue is whether it can be the basis for a change of custody.

*In re Ashley K.* (1991), 212 Ill. App. 3d 849, 571 N.E.2d 905, requires that the only consideration in determining custody of a child is the best interests of the child. In the case before the trial court the choice was between the mother, who had overcome drug and alcohol dependency, exercised visitation without fail, demonstrated good parenting for an older child and established a stable relationship with a man she was engaged to marry, and the father, who was still caught up in the "vicious circle" of "working and partying" but whose parents were providing stable care for the child.

I believe this is a close case. The trial court was called upon to choose between continuity of care and care by the child's natural parent. The court exercised its discretion in reliance on *Gibbons* in favor of the natural parent. Because I find no evidence that the trial court abused its discretion, I would affirm its decision.