2025 IL App (1st) 230951-U

FIFTH DIVISION
June 13, 2025

Nos. 1-23-0951, 1-23-1765, & 1-23-2043 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | |
| JESSICA NASSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 19 D 5148 |
| | ) | |
| STEVEN NASSON, | ) | Honorable |
| | ) | Lori Rosen, |
| Respondent-Appellant | ) | Judge Presiding. |
| | ) | |
| (Frumm & Frumm, Appellee). | ) | |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Although the hearing on respondent's attorney's petition for final fees should have been held after respondent's petition for contribution had been decided, the timing error was harmless. The trial court's dissipation award was not against the manifest weight of the evidence. The court did not abuse its discretion in the division of the marital estate or in denial of respondent's request for contribution. Respondent's contention that the trial court's decision rested on an incorrect listing of what he owed his attorneys is forfeited because of respondent's failure to raise it in the trial court.

¶ 2     Respondent Steven Nasson appeals the trial court's grant of a fee petition in favor of Frumm & Frumm, his third attorney of record, and the judgment dissolving his marriage from petitioner Jessica Nasson, where he challenges the court's finding that he dissipated assets and its division of the marital estate 60/40 in favor of Jessica. We affirm the trial court in all respects.

¶ 3                                I. BACKGROUND

¶ 4     The record in this case is vast and filings from both Jessica and Steven reflect the acrimonious nature of the proceedings—including petitions for a temporary restraining order and for contempt, and allegations of verbal disparagement and harassment. Few of these disputes are relevant to the issues on appeal but they set the background against which this case proceeded for almost four years in the trial court. We focus on that part of the record that bears on the issues before us on appeal.

¶ 5                          A. The Dissolution Judgment

¶ 6     Jessica and Steven were married on December 12, 2015, in Chicago, Illinois. They have one child, a son, born October 2, 2016. On June 13, 2019, Jessica filed a petition for dissolution of marriage, alleging irreconcilable differences. Steven filed his own petition for dissolution of marriage on June 18, 2019. When the court filed its judgment for dissolution of marriage on April 24, 2023, Jessica was 40 and Steven was 47.

¶ 7     The trial occurred over eight days spread between January and June 2022. Jessica and Steven both testified. Steven also presented the testimony of Mr. Hanlon, Kevin Way—the former chief technology officer for Turf Health, LLC (Turf), a company that Steven had worked for and had an ownership stake in, and Adam Knoll—a friend and financial advisor at Merrill Lynch. Jessica presented the testimony of James Arogeti, an expert regarding the valuation of Turf.

¶ 8     Both Steven and Jessica worked during the marriage. At the time of trial, Jessica was the

senior director of agency and brand partnerships at Kerv Interactive, receiving a yearly salary of $182,000 with the potential for commission and bonuses. Steven had been employed as the chief operations officer of Turf, a consulting business focused on expanding referrals for ophthalmologists. Steven's most recent ownership stake in the company was 40%, with the remaining 60% held by his partner, Sean Hanlon.

¶ 9    The value of Steven's stake as well as the income he received from Turf was very much disputed at trial. Turf's tax returns between 2017 and 2020 indicate gross sales between $709,690 and $1,905,875 each year and checking statements from 2021 show average monthly distributions of $20,129 from Turf to Steven.

¶ 10    On March 1, 2022, while the trial was still ongoing, Steven terminated his employment at Turf and collected a final distribution of $80,000. Steven claimed this was the total value of his 40% stake in the company. Steven and Mr. Hanlon had testified about their work at Turf at the start of trial but did not mention Steven's impending departure from the company. Mr. Way testified later in the trial and said that Steven was expected to join Mr. Hanlon in a sales role at a new company in the same industry, CoFi. There was no indication in the record that Steven collected any income from CoFi .

¶ 11    Additional testimony concerned the parties' nonmarital assets, childcare expenses, contribution petitions, and conduct throughout the marriage and trial. The parties presented conflicting testimony on many points and agreed on few specifics. Evidence was presented showing rental income of approximately $6,317 per month from real estate properties that Steven owned individually, as well as additional income from various investments that each of the parties owned and some of which they owned as joint property.

¶ 12    On April 24, 2023, the court entered its written dissolution judgment. That judgment was

3

a detailed 28 pages. In the judgment, the court stated that it found that Steven's testimony throughout trial was "evasive, argumentative, noncompliant with the Court's directives, and lack[ing] credibility." The court similarly found that Mr. Hanlon's testimony was not credible. However, the court noted that it found the testimony of Jessica, Mr. Way, and Mr. Arogeti to be credible.

¶ 13    Jessica was awarded, as nonmarital property, a condominium in Chicago valued at $167,500 and several retirement accounts. The court awarded Steven as nonmarital property two Florida condominiums, a condominium in Chicago, his Jeep, six retirement accounts worth a combined total of $2,231,212.75, and seven Merrill Lynch investment accounts with a nonmarital portion valued at $2,389,485.5. In total, Jessica asserts, and Steven does not dispute, Jessica was awarded $257,642.61 in nonmarital property and Steven was awarded $5,272,825.25 in nonmarital property.

¶ 14    The court classified as marital property the house that had been the family residence, one car, a number of cash accounts and investment accounts, and Steven's interest in Turf, which the court valued at $800,000.

¶ 15    Regarding the valuation of Turf, the court explained that it "d[id] not find Steven's testimony credible regarding his termination and value of Turf weeks after trial commenced, especially considering that Steven was expected to join the new company (CoFi) with his same partners and in the same industry, but Jessica would not have any claim to Steven's interest in CoFi." The court cited the testimony of Mr. Arogeti, who found the fair market value of Steven's 40% interest in the company was worth $800,000, a figure which was consistent with a valuation Steven and Mr. Hanlon had calculated prior to the start of trial.

¶ 16    The court also ordered each party to be liable for any debts in their name. It noted that these

were minimal, explaining, "Outside of costs associated with litigation in the instant case, neither party has substantial debt or liabilities." Among these debts, the court listed several credit cards that Steven and Jessica had in their names and their balances, attributing an American Express card ending in 82000 (AMEX) with a present balance of $10,321.92 to Steven. The court listed Steven's debts related to the litigation, including $7500 to Mr. Modica and $12,500 to Mr. Serota in expert fees. In outlining Steven's debts, the court listed the amount that Steven owed to Frumm & Frumm as $32,145. Jessica had credit card bills totaling $1,726.71. The dissolution order did not list any attorney fees under Jessica's outstanding debts and liabilities.

¶ 17     The court rejected Jessica's request that she be awarded maintenance. The court ordered the marital estate to be divided 60/40 in favor of Jessica. The trial court reasoned that such a split was fair and equitable, "taking into account the applicable statutory factors, evidence at trial, and circumstances of the parties." The court pointed to Steven's "considerably larger" nonmarital assets. Jessica, the trial court noted, had been her son's primary caretaker, managed his various health issues, and "paid for and engaged [him] in his extracurricular activities," all of which allowed Steven to travel frequently for Turf and advance his career.

¶ 18     Prior to trial Jessica had served her notice of intent to claim dissipation in the amount of $234,886.20. claiming that, since January 2019, Steven made numerous personal expenditures out of marital funds, The dissolution order rejected most of the dissipation claim but ordered reimbursement to the marital estate from Steven's nonmarital funds in the amount of $29,200.25. This amount included $4245.63 in charges that Steven had paid on his Amex credit card bill, which is the only amount of dissipation that is disputed on this appeal.

¶ 19                                   B. Attorneys' Fees

¶ 20     Between March 2020 and October 2021, Jessica filed three petitions requesting, in total,

more than $250,000 in interim and prospective attorney fees from Steven. Of this amount, the court ordered Steven to pay, in total, $130,000 to Jessica in interim and prospective attorney fees and costs.

¶ 21 On June 28, 2021, Beermann LLP, the second law firm to represent Steven, moved to withdraw as his counsel "[f]or professional reasons." That motion was granted on July 26, 2021, and Frumm & Frumm filed its appearance on behalf of Steven on August 10, 2021. On August 16, 2021, Beermann then petitioned for its final fees and costs.

¶ 22 On January 13, 2022, Steven filed a petition seeking contribution from Jessica, for his attorney fees and costs. He alleged in his petition that his income had been significantly curtailed because of the COVID-19 pandemic, while Jessica's income continued to grow. Jessica countered with a petition for contribution to her attorney fees on January 20, 2022, in which she argued that her income had also been reduced because of the pandemic and that her separation from Steven and departure from their marital residence caused her to incur significant additional expenses. Steven and Jessica each blamed each other for prolonging litigation and unnecessarily increasing attorney fees.

¶ 23 On May 2, 2022, before the trial was concluded, Frumm & Frumm filed its motion to withdraw from its representation of Steven due to irreconcilable differences. Frumm & Frumm explained that it had "advised Steven on the benefits of hiring certain experts to testify on his behalf in connection with trial" and that Steven was "unwilling to pay the mandatory costs and fees required to prepare [the] case for trial." It does not appear that this motion to withdraw was ever ruled on and that Frumm & Frumm continued to represent Steven through the end of trial, on June 13, 2022.

¶ 24 On July 27, 2022, after a hearing, the trial court awarded Beermann final fees and costs in

the amount of $42,801.69 to be paid by Steven. In its order, the court stated that Steven did not appear at the hearing, did not have counsel representing him at the hearing, and that one of the attorneys appearing on behalf of Beermann "testified that she had spoken with Mr. David Frumm ([Steven]'s attorney) who indicated he would not be representing [Steven] at said Hearing." The court said that the evidence presented by Beermann showed an outstanding balance of $42,801.69, that Steven failed to provide evidence to dispute the allegations and failed to include any specific objections to what fees he believed were unreasonable in his answer, and that the fees charged in the case were fair and reasonable.

¶ 25    On August 22, 2022, Frumm & Frumm filed a second petition to withdraw as counsel for Steven, again citing irreconcilable differences. That petition was granted on October 28, 2022.

¶ 26    On November 9, 2022, Frumm & Frumm petitioned for an award of its final attorney fees and costs. In the petition, Frumm & Frumm alleged it had zealously advocated for Steven on issues including "allocation of parental responsibilities, parenting time, maintenance, child support and allocation of child-related expenses, the division of the nonmarital and marital estates, allocation of debt, reimbursement, interim attorney's fees and dissipation." Frumm & Frumm said that the parties in the case "remained estranged and extremely acrimonious, resulting in substantial attorneys' fees and costs being incurred," and that it had "advised Steven on the benefits of settlement, as opposed to proceeding to trial," but that "Steven insisted upon proceeding to trial, regardless of the cost." Frumm & Frumm alleged it had advised Steven to retain a business valuation expert, Joe Modica, but that Steven refused to authorize presenting Mr. Modica at trial and refused pay Frumm & Frumm's actuary, Mitchell Serota, to refute the opinions of Jessica's actuary about Steven's alleged comingling of marital and nonmarital assets. Frumm & Frumm spent extensive time and effort in preparing for trial, during which Steven "routinely bec[a]me

non-responsive and uncooperative." Frumm & Frumm said, "Steven's conduct throughout Frumm & Frumm's representation severely compromised their ability to properly and professionally represent Steven, which this court is well aware of." According to a supplemental affidavit filed by David Frumm of Frumm & Frumm on February 14, 2023, as of that date Steven had a current outstanding balance of $149,675.00.

¶ 27 A hearing on Frumm & Frumm's fee petition took place over two days, March 2 and 9, 2023. Although the record does not include transcripts from the hearing, in response to Steven's motion to certify a bystander's report, the trial court published its own bystander's report, which we summarize here.

¶ 28 David Frumm of Frumm & Frumm called Steven—who represented himself at the hearing—as his first and only witness. Steven agreed that the case required the retention of certain experts but said that the testimony of Mr. Modica—who was retained to value Turf—was unnecessary as Steven was terminated from Turf in March 2022. Steven explained that he refused to pay Mr. Serota because Steven never signed an agreement with Mr. Serota, never communicated with Mr. Serota, never received an invoice for Mr. Serota's services, and told Frumm & Frumm that Mr. Serota was not needed. However, as noted by the court in the bystander's report, "[t]here was an agreement between Frumm & Frumm and Steven to hire [Mr.] Serota" in order to "refute the testimony of Jessica's retained actuary."

¶ 29 Frumm & Frumm initially moved to withdraw as Steven's counsel because Steven refused to present Mr. Modica—which Frumm & Frumm felt "sabotaged and seriously interfered with their representation of Steven and the attorney-client relationship"—and because Steven had either failed or refused to pay certain costs connected to his legal representation.

¶ 30 The court asked Steven if he had gone through Frumm & Frumm's itemized charges, which

8

he had, and then asked if he objected to any of those charges as unreasonable. According to the court:

> "Steven likewise answered in the affirmative, but was disputing the amount. And that he felt the sum sought was excessive given the amount of work required in the case, along with 'unscrupulous business practices' by his former attorney, and that he had already tendered to David Frumm $78,000 for past charges."

The court then suspended the hearing, ordering Steven to list out any objections he had to his former attorney's itemized charges, and "noted it would decide whether the objected [to] charges were reasonable."

¶ 31    The bystander's report indicates that Steven's only objection to hearing the fee petition before his petition for contribution had been decided was to remind the court that the dissolution judgment had not been entered yet, although the trial had been concluded almost 300 days earlier. The court responded that the delay in the entry of the dissolution judgment was due to a member of her staff suffering a family tragedy and that a dissolution judgment would be entered soon.

¶ 32    Steven continued to represent himself at the March 9, 2023, hearing. According to the bystanders' report, on that date, the court acknowledged receipt of Steven's objections, and Mr. Frumm was allowed to orally respond to those objections. Steven argued that he was told by the firm that he would be divorced in six months at the initial consultation and that Frumm & Frumm "would make every attempt to obtain an amicable resolution or the earliest trial date available." Steven also said he reached out to Frumm & Frumm between March and June 2022 to dispute charges or ask for information about his case. Steven objected to Mr. Frumm's closing arguments during the dissolution trial and complained that his request for changes to those arguments had been ignored. Steven asked to be able to object to more than specific individual charges and for

the court to consider his contention that Frumm & Frumm's $150,000 worth of charges since January 2022 was *prima facie* unreasonable compared to the initial $77,000 he had paid. The court denied this request. Steven also argued that Mr. Frumm had not performed any work after the trial had ended.

¶ 33    On March 9, 2023, the trial court entered a judgment against Steven on Frumm & Frumm's fee petition in the amount of $141,281.25. The court noted that having reviewed Frumm & Frumm's monthly itemized billing statements and hearing arguing from Frumm & Frumm and Steven, it had deducted $8393.25 from the outstanding balance owed to Frumm & Frumm. The court found that the awarded fees were "fair, reasonable and necessary in view of the nature of the controversy, the significance and importance of the subject matter, the degree of responsibility involved, the standing and skill of Frumm & Frumm, and the time and labor involved."

¶ 34    The court ultimately ruled on both parties' contribution petitions in its April 24, 2023, dissolution order. In that order, the court listed a number of ways in which it found that "Steven's behavior unnecessarily increased the cost of litigation," then denied his petition for contribution. The court granted Jessica's petition for contribution, ordering Steven to pay $20,000 directly to her attorneys. At that point, according to the dissolution order, Jessica still owed $135,747.82 to her attorneys, in addition to the $20,000 that Steven was ordered to pay.

¶ 35    Steven now appeals both the dissolution judgment and the order that he pay fees to Frumm & Frumm (appeal No. 1-23-0951).

¶ 36    Steven also initially appealed two other orders of the trial court—a contempt finding for failure to pay sums outlined in the dissolution judgment (appeal No. 1-23-1765) and a suspension of parenting time as a sanction for the failure to pay those sums (appeal No. 1-23-2043). Steven moved to consolidate first appeal Nos. 1-23-0951 and 1-23-1765, which we allowed on October

10, 2023, and then moved to consolidate appeal No. 1-23-2043 with the other two, which we allowed on December 18, 2023. Then, on December 26, 2023, Steven filed a motion to dismiss appeal Nos. 1-23-1765 and 1-23-2043, explaining that a settlement had been negotiated which "resolved the sanctions & purge portions of the contempt orders." We granted the motion, dismissing appeal Nos. 1-23-1765 and 1-23-2043 on January 2, 2024. Accordingly, the only appeal now before us is appeal No. 1-23-0951.

¶ 37                                    II. JURISDICTION

¶ 38     The trial court entered its order on Frumm & Frumm's petition for fees on March 9, 2023, and the final dissolution judgment on April 24, 2023. On May 24, 2023, Steven timely filed his initial notice of appeal *pro se*, listing only the April 24, 2023, judgment as well as "any other judgments not disclosed to me." On November 28, 2023, Steven—represented by counsel—filed an amended notice of appeal with leave of this court, specifically adding the March 9, 2023, order on Frumm & Frumm's attorney fees.

¶ 39     The fee order is properly part of this appeal. "The request for attorney fees in a dissolution action that has not yet been resolved is not an independent action and must be considered to be part of the overall divorce proceeding." *In re Marriage of King*, 336 Ill. App. 3d 83, 88 (2002). Accordingly, we have jurisdiction over this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 40                                    III. ANALYSIS

¶ 41                          A. Frumm & Frumm's Final Attorney Fees

¶ 42     Steven argues that the final fee award to Frumm & Frumm should be vacated because it was prematurely granted on March 9, 2023, approximately six weeks before Steven's claim for

11

contribution was denied as part of the final dissolution judgment on April 24, 2023. Steven argues that this violates section 508(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(c) (West 2022)). Steven also argues that the fees awarded were too high. We first address the timing of the award since that is Steven's primary argument.

¶ 43    Section 508(c) governs final hearings for attorney fees and costs in marriage dissolution cases and provides in relevant part that "[n]o final hearing under this subsection (c) is permitted unless: ***judgment in any contribution hearing on behalf of the client has been entered or the right to a contribution hearing under subsection (j) of Section 503 has been waived ***." 750 ILCS 5/508(c)(2)(iii) (West 2022). Section 503(j), in turn, provides that "[a]fter proofs have closed in the final hearing on all other issues between the parties (or in conjunction with the final hearing, if all parties so stipulate) and before judgment is entered, a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided." *Id.* § 503(j).

¶ 44    According to Steven, because his petition for contribution was still pending when the court awarded section 508(c) fees to Frumm & Frumm, the fee award to Frumm & Frumm should be vacated. In response, both Jessica and Frumm & Frumm argue that any error in the court's timing was harmless.

¶ 45    Reading the plain language of sections 508(c) and 503(j) together, it is clear that the proper procedure here would have been for the trial court to rule on Steven's petition for contribution before awarding fees to Frumm & Frumm under section 508(c). That is not what happened. However, we agree with both Jessica and Frumm & Frumm that the court's failure to follow the proper sequence of its orders in this case was harmless.

¶ 46    Steven claims that the harmless error cases cited by Jessica and Frumm & Frumm are not helpful here. But those cases show that a variety of trial court errors in proceedings under the Act

12

may be harmless. See, *e.g.*, *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 664 (2008) (finding that even if the trial court made a valuation error, the error was harmless in light of the trial court's distribution of the $8.7 million marital estate); *In re Marriage of Toole*, 273 Ill. App. 3d 607, 619 (1995) (finding that the trial court's error in refusing to allow a statement made by the petitioner in a settlement offer that contradicted her trial testimony about whether a certain payment from the respondent's parents was a gift or a loan was harmless because it did not seem that if the statement had been allowed into evidence, the trial court would have changed its decision about the payment). As our supreme court has made clear, where it appears that an error "did not affect the outcome below," reversal is not required. *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 115 (1985).

¶ 47    We have also applied a harmless error analysis to cases under the Act where, as in this case, the trial court has not acted in accordance with the relevant statute. In *In re Marriage of Bass*, 176 Ill. App. 3d 249, 253 (1988), we found the error to be harmless where the trial court applied the wrong section of the Act when it modified child custody. That case involved sections 610(a) and 610(b) of the Act; at that time, section 610(a) applied if a petition to modify was filed within two years of the final dissolution judgment, while the "more stringent" standards of section 610(b) applied after that two-year period elapsed. *Id.* (citing Ill. Rev. Stat. 1987, ch. 40, ¶¶ 610(a), (b)). While the petition to modify at issue in *Bass* was filed before the two-year period was over, the court did not hold the hearing on that petition until after the two years, but still cited and applied the criteria in section 610(a), which was incorrect. *Id.* We found that remand for reconsideration under section 610(b) was unnecessary because the trial court had made "sufficiently specific" findings that met the requirements of section 610(b). *Id.* We "affirm[ed] the trial court regardless of its understandable and *nonprejudicial* finding" (emphasis added). *Id.*

13

¶ 48    This court has also used a harmless error lens in other proceedings where the trial court has failed to follow statutory requirements. For example, in *In re Watts*, 250 Ill. App. 3d 723, 725-26 (1993), the trial court failed to hold an involuntary commitment hearing within the time dictated by the required statute (see 405 ILCS 5/3-706 (West 2000)), and the respondent argued on appeal that the court's failure to comply with the statute required reversal. In rejecting this argument, we explained that "[b]ecause involuntary commitment proceedings affect important liberty interests, strict compliance with statutory procedures is required," but "reversal is not required unless [the] respondent is in some way prejudiced by the failure to comply with the statutory requirements." *Watts*, 250 Ill. App. 3d at 726; see also *Matter of McMahon*, 221 Ill. App. 3d 383, 386, 388 (1991) (finding that failure to follow statutory time for appointing an attorney and providing the respondent with a copy of the order of commitment "did not prejudice [the] respondent and does not constitute reversible error.")

¶ 49    We can certainly imagine cases in which awarding fees when a contribution claim is pending would create prejudice, including, for example, to the spouse who is ordered to contribute but has no opportunity to contest the amount of fees. However, that is not the scenario here and the only harm that Steven suggests occurred is that in the dissolution judgment (in which Steven's claim for contribution was denied) the court listed the final fee award to Frumm & Frumm as $32,145 instead of $141,281.25. We discuss this error in our analysis of Steven's arguments regarding distribution of the marital estate and for contribution. However, this error has nothing to do with the award of fees itself and in no way suggests that the award to Frumm & Frumm would have been different if the fee petition had been considered after the court had ruled on Steven's request for contribution.

¶ 50    Steven also argues that failure to adhere to the statutory requirement that attorneys wait

until contribution has been decided before the attorneys seek fees would be an "incentive" for firms to seek fees early in the dissolution proceeding and "game the system" by seeking fees before marital assets have been spent on the divorce. Nothing in this case suggests that Frumm & Frumm was gaming the system or deliberately seeking fees prematurely to jump the line. To the contrary, fees were not sought until almost 300 days after the dissolution trial was concluded. If and when a firm is "gaming the system," we have complete faith that the courts can and will deal with it appropriately. In this case, there was an unusually long delay between the trial and the dissolution judgment that also resolved the contribution claim, and the court's ruling on Frumm & Frumm's fee petition several weeks before that judgment was entered simply did not prejudice any of the parties.

¶ 51    Steven argues that the fee award should also be vacated because the trial court "erred when it ruled it would only consider the itemized invoices." In support, Steven relies on *In re Marriage of Kane*, 2016 IL App 2d 150774, ¶ 29, but the *Kane* court did not hold that a court *cannot* consider itemized invoices, only that it is *not required* to do so. Moreover, Judge Lori Rosen presided over this case starting in July 2021 and was thus privy to the entirety of Frumm & Frumm's representation of Steven. The court ordered Steven to object to specific itemized charges, but made clear in its order that it considered Frumm & Frumm's requested fees in light of "the nature of the controversy, the significance and importance of the subject matter, the degree of responsibility involved, the standing and skill of Frumm & Frumm, and the time and labor involved." Thus, the court was looking at the firm's overall performance and found the fees reasonable in that light.

¶ 52    Steven also argues that the court should have specifically considered "Frumm's non-feasance" by failing to appear on his behalf at the hearing for Beermann's section 508(c) petition, claiming that "[t]his oversight cost [him] an additional $42,801.69." However, the court's order

on the Beermann petition says that one of the attorneys appearing on behalf of Beermann "testified that she had spoken with Mr. David Frumm ([Steven]'s attorney) who indicated he would not be representing [Steven] at said Hearing." Citing this order, Frumm & Frumm states in its brief that Steven had "elected" to represent himself regarding the Beermann petition and Steven does not dispute this assertion in his reply nor can he point to anything in the record that contradicts this explanation for the court's actions.

¶ 53    We review the award of attorney fees for an abuse of discretion. *In re Marriage of Kane*, 2016 IL App (2d) 150774, ¶ 24. "All reasonable presumptions are in favor of the action by the trial court, and, absent an affirmative showing to the contrary, the reviewing court will assume the trial court understood and applied the law correctly." *Id.*

¶ 54    Here, we find no abuse of discretion. Awarding final attorney fees prior to ruling on contribution in this case was harmless error. The court deducted approximately $8000 of the requested fees and found the rest to be reasonable and necessary. We presume the court acted properly, and Steven has failed to show the court abused its discretion in the fee award to Frumm & Frumm.

¶ 55                                        B. Dissipation

¶ 56    Steven argues that the trial court erred in ordering him to reimburse the marital estate for dissipated charges on his AMEX while also declaring him responsible for this credit card debt going forward because it was a "double-dip," that meant he was charged twice for the same expenses. However, the record does not support this claim, which fails to account for the fact that Steven's expenditures of marital funds prior to the dissolution for his personal property can be dissipation.

¶ 57    All the property of the parties to a marriage belongs to one of three estates: the estate of

the husband, the estate of the wife, or the marital estate. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 641–42 (1993). Generally, property acquired by either spouse after the marriage, but prior to a judgment of dissolution, is presumed to be marital property, unless it has been acquired by gift or another limited exception applies. 750 ILCS 5/503(b) (West 2019); *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 69.

¶ 58     Dissipation is "the use of marital property for the sole benefit of one spouse for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown." *In re Marriage of O'Neill*, 138 Ill. 2d 487, 496 (1990). This definition covers the period from the beginning of the breakdown of the marriage through the entry of the final judgment. *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 375 (2008). A trial court's determination of whether dissipation occurred is a factual one and will not be disturbed on appeal, unless it is against the manifest weight of the evidence. *In re Marriage of Vancura*, 356 Ill.App.3d 200, 204 (2005). We see nothing to suggest that the trial court's finding that Steven dissipated marital assets in the amount of a total of $29, 200.25, which included this disputed $4245.63 in his payments of his AMEX bill, was against the manifest weight of the evidence.

¶ 59     In her intent to claim dissipation, Jessica provided the court with itemized credit card and bank account statements totaling $234,886.20, which she argued was dissipated from the marital estate. Of that, she alleged that $12,373.35 was charged on Steven's AMEX. The trial court found that Steven had dissipated $29,200.25 in marital assets, which included charges on Steven's AMEX of $4245.63. Steven does not dispute the rest of the dissipation amount but maintains that since he was always responsible for paying this card and accepts responsibility for its future payment, simultaneously ordering him to reimburse the marital estate for these charges is a "double-dip."

¶ 60 However, the record reflects that Steven charged the disputed $4245.63 in nonmarital expenses to his AMEX card between March 2020 and March 2021, and he that he would have paid those charges off long before the divorce became final on April 24, 2023. Statements from the Bank of America checking accounts, which the court found to be marital property, show regular payments to several credit cards, including this AMEX. So even if, as Steven suggests, he was the only one who paid the AMEX bill before the dissolution order was entered, he made those payments *from the marital estate* prior to the entry of the dissolution order. There was no overlap between the dissipation that the court found and the future charges that Steven was also responsible for.

¶ 61                                C. Division and Contribution

¶ 62 Steven last argues that the trial court erred in awarding Jessica a higher share of the marital estate and denying his claim for contribution because the court significantly undercounted the amount of money he owed to Frumm & Frumm. Specifically, he cites the $32,145 that the trial court listed in the dissolution order as attorney fees that he owed to the firm which he contrasts to the $141,281.25 that he was ordered to pay to Frumm & Frumm. Jessica counters that the 60/40 division of the marital estate is still equitable because she incurred similar expenses associated with litigation that were just not listed as outstanding debts on the dissolution order and Steven had significant income and far greater nonmarital assets than she did.

¶ 63 The Act requires the court to identify the parties' marital and nonmarital property in a dissolution of marriage proceeding and then "divide the marital property without regard to marital misconduct in just proportions considering all relevant factors," then lists a number of factors to be included in this calculation. Those factors include the economic circumstances of each partner when the division is to become effective, duration of the marriage, custodial provisions for

18

children, health of each partner, and opportunity to earn future income. 750 ILCS 5/503(d) (West 2022). The division must be equitable, but not necessarily equal. *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 103.

¶ 64    We review the court's distribution of marital property for an abuse of discretion. *In re Marriage of Klose*, 2023 IL App (1st) 192253, ¶ 31. An abuse of discretion in the division of marital property is found only when it is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 65    Here, the trial court divided the marital estate 60/40 in favor of Jessica. The court pointed to the fact that the marriage was short and that both parties were able to support themselves and had high future earning potential. However, the court noted that Steven had earned considerably more, and that Jessica had taken the primary role in caring for their son, allowing Steven to advance his career. The court also justified this division based on Steven having "considerably larger" nonmarital assets. The trial court also explained, "Outside of costs associated with litigation in the instant case, neither party has substantial debt or liabilities." These are precisely some of the factors that the statute cites as relevant and the record amply supports the court's finding as to each of them.

¶ 66    The only real argument Steven makes about the 60/40 division is the fact that in the court's dissolution order listing "Steven's Debts and Liabilities," it included an entry of: "Frumm & Frumm $32,145 attorney fees." Steven argues that this figure is inconsistent with the court's March 9, 2023, order, which required that Steven pay $141,281.25 to Frumm & Frumm. The record contains no indication that Steven ever brought this supposed error to the trial court's attention, where it could have been quickly addressed. Steven's failure to raise this supposed error with the trial court results in forfeiture and we will not consider it at this point.

¶ 67    As our supreme court has made clear: "Issues not raised in the trial court are waived and cannot be argued for the first time on appeal." *In re Marriage of Minear*, 181 Ill. 2d 552, 564, (1998); see also *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 85 (finding a party was precluded from arguing dissipation of specific sums on appeal where the issue had not been argued in her written closing argument before the trial court); *In re Marriage of Alexander*, 368 Ill. App. 3d 192, 205 (2006) (valuation error did not warrant reversal, in part, because "James failed to raise this argument in a posttrial motion to allow the circuit court to address and correct the error.") While Steven was not obligated to file a post-trial motion since this was a bench trial (Ill. S. Ct. R. 366(b)(3)(ii) ), this did not excuse his failure to raise this supposed error with the trial court.

¶ 68    Forfeiture is particularly appropriate here because this supposed mathematical error could have been easily addressed by the trial court. We do not know where the $32,145 came from and whether it represented an earlier amount that Steven owed to Frumm & Frumm. We do not know—although we seriously doubt—that if the court had learned of this "error" it would have altered its 60/40 division. In addition, as Jessica notes, her equivalent debt to her attorneys was not specifically listed in the parties' outstanding debts. All of this mystery could have been resolved if Steven had simply raised this error in the trial court after it issued the dissolution judgment. This is not a forfeiture that the court has any reason to overlook.

¶ 69    Here, the trial court provided clear and thorough rationale for its 60/40 split based on the statutory factors in section 503 of the Act. 750 ILCS 5/503 (West 2019). The trial court made clear that when it considered the parties' debts to not be "substantial" for purposes of dividing the marital estate, it was referring only to those "[o]utside of costs associated with litigation in the instant case." It also made clear that this split was based on a consideration of *all* relevant statutory factors, including Steven's considerable nonmarital assets and income and the fact that Jessica had not

been able to contribute much to her savings since moving out of the marital home. There is no indication that litigation debts—correctly or incorrectly tabulated—played a significant role in this determination or that no reasonable person would take the view of the trial court in light of all the additional factors under consideration.

¶ 70    Steven also argues that the court's incorrect listing as to the amount that he owed Frumm & Frumm warrants reconsideration of the court's denial of his petition for contribution. Again, because Steven has forfeited this argument, we will not consider it on appeal.

¶ 71                                    IV. CONCLUSION

¶ 72    For the above reasons, we (1) affirm the award of final attorney fees and costs to Frumm & Frumm, (2) affirm the trial court's award of dissipation, (3) affirm the trial court's division of the marital estate.

¶ 73    Affirmed.